HAMER v. SANFORD et al.   (No. 1644.)*

(Court of Civil Appeals of Texas. Texarkana.
June 22, 1916. Rehearing Denied
Oct. 5, 1916.)

1. EVIDENCE ☞592—AVAILABILITY TO OTHER PARTY.

Evidence offered by plaintiff in trespass to try title to prove common source of title cannot be considered as evidence of title in the defendant, unless offered by him.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2429; Dec. Dig. ☞592.]

2. GUARDIAN AND WARD ☞100 — SALE OF LAND—ORDER—NECESSITY OF APPOINTMENT—VALIDITY.

One not validly appointed guardian of an infant was not a guardian, and orders of the county court for sale of land of the infant by such person were void.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 372, 373; Dec. Dig. ☞100.]

3. GUARDIAN AND WARD ☞105(2)—SALE OF LAND — VALIDITY OF ORDERS — DIRECT ATTACK.

Where plaintiff in trespass to try title alleged that one who assumed to sell the land as her guardian under orders of court was not legally or in fact her guardian, and was without authority to sell the land, the allegations must be construed as a direct attack on such orders, and entitle her to prove that such person was not her guardian.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 385, 388; Dec. Dig. ☞105(2).]

4. GUARDIAN AND WARD ☞108—SALE OF LAND—INVALIDITY — CARE AND SUPPORT — LIABILITY.

Since the liability of an infant to one rendering him care and support is personal, and does not attach to his property, an infant who by trespass to try title seeks recovery of land sold by one assuming to be her guardian cannot, as a condition precedent to recovery, be required to refund purchase money expended by her assumed guardian for her support.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 369, 395–398; Dec. Dig. ☞108.]

5. TRESPASS TO TRY TITLE ☞47(3)—AMOUNT OF RECOVERY—IMPROVEMENTS.

Plaintiff in trespass to try title may be required to pay to the one in possession, if his possession was in good faith, and on belief that he was entitled to possession based upon good grounds, the amount of the difference between the rental value of the land while he had pos-

session and the value of improvements placed thereon by him.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 69; Dec. Dig. ⊙═▶47(3).]

Appeal from District Court, Delta County; A. P. Dohoney, Judge.

Trespass to try title by Eulala Sanford and husband against R. W. Foster, A. F. Hamer, and another. From the judgment rendered, Mrs. Sanford and Hamer appeal. On Hamer's appeal, affirmed.

This was a suit of trespass to try title and for damages, brought by Eulala Sanford, joined pro forma by her husband, against R. W. Foster, F. M. Nidever, and A. F. Hamer. The land sued for consisted of five adjoining tracts, together containing 173.85 acres, in Delta county. Mark Foster was the source of the title asserted by the parties respectively. Eulala Foster was the daughter of said Mark Foster. She proved, and the court found, that her father died July 19, 1908, leaving a will, which was duly probated, whereby he devised the land to her.

The answer of Nidever to the suit, if he made one, is not in the record sent to this court. The answers filed by Foster and Hamer consisted of pleas of not guilty and pleas containing allegations as follows: That in his will Mark Foster named R. W. Foster as executor without bond and appointed him guardian of the estate of Eulala, then a minor; that said R. W. Foster had said will .duly probated; that it was his purpose to be appointed guardian of Eulala's estate, and he was advised by counsel he employed that the court had appointed him as such guardian; that he was so appointed by the county court of Delta county in 1909; that, acting as such guardian, he, at the February term, 1910, applied to said court for an order authorizing him to sell the land in controversy; that his application was granted, and said court on February 28, 1910, made an order directing him to sell the land; that in accordance with the order he sold the land, Nidever being the purchaser; that he made due report of the sale, and on March 7, 1910, the court by an order then made confirmed same and directed him to make title to the purchaser; that at the time the application and orders mentioned were made a necessity existed for the sale of the minor's lands, as she owned no personal property which could be applied to her support and maintenance; that he continued thereafterwards to act as guardian of Eulala's estate, and disbursed the proceeds of the sale to Nidever for her support and education; that in making the application for the order authorizing him as guardian to sell the land and in selling same he acted in good faith and in accordance with the advice of counsel, believing he was the guardian of Eulala's estate; that, if he was not such guardian de jure, he was de facto; and that Eulala, having received the benefit of the sale made to Nidever, was bound by his acts as guardian. In their said pleas Foster and Hamer prayed that in the event the court determined that Eulala was entitled to recover the land, she be required as a condition to such recovery to return the money realized by Foster from the sale thereof to Nidever. In his answer Hamer further alleged that he in good faith had had adverse possession of 130 acres of the land for more than a year before Eulala commenced her suit, and had made permanent and valuable improvements thereon, for the value of which he asked a recovery against Eulala in the event she recovered the land.

In a supplemental petition the plaintiffs charged that R. W. Foster never was guardian of Eulala's estate, and that he knew when he applied for the order to sell the land that he had never been appointed guardian thereof, and that in applying for that order and in obtaining the order confirming the sale he made to Nidever he perpetrated a fraud on the court, and that his purpose was to convert the value of the land to his own use.

With reference to the matters pleaded by Foster and Hamer the court found as facts: That at the time her father died Eulala was 14 years of age; that R. W. Foster never applied for and was never appointed guardian of her estate; that, "believing he had authority to do so," said R. W. Foster as such guardian applied for and procured the orders directing and confirming the sale made to Nidever; that, as such guardian, on March 7, 1910, he conveyed the land to Nidever in consideration of $250 paid to him by Nidever and the latter's promissory notes for $1,250, which he (Foster) sold for $1,200; that on January 2, 1911, Nidever sold and conveyed the land to Hamer; that in buying it the latter acted in good faith, believing Nidever owned it; that Hamer, after buying the land, placed on it permanent and valuable improvements, which enhanced its value in the sum of $1,615; and that Foster, on account of board, lodging, clothing, and other necessaries for Eulala while she was a minor and before she married, had paid sums aggregating $1,766. On the findings just recited and further findings made by him that Eulala was the devisee of the land named in her father's will, and that the rental value of the land during the time Nidever and Hamer had possession of it was $1,200, the court concluded that the purported guardianship proceedings and the deed of Foster as guardian to Nidever were void, and that Eulala Sanford was entitled to the land on paying to Hamer the sum of $415, which he found to be the excess of the value of the improvements placed on the land over the rental value thereof, and rendered judgment accordingly. From this judgment both Mrs. Sanford and Hamer have appealed.

Newman Phillips, of Cooper, for appellants. J. L. McNeese, of Dallas, and James Patteson, of Cooper, for appellees.

WILLSON, C. J. (after stating the facts as above). That Mrs. Sanford, as her father's devisee, owned the land at the time R. W. Foster as her guardian undertook to convey it to Nidever, is not questioned by Hamer. His contention was and is that it appeared that he had acquired her title. As supporting his contention, Hamer refers to proof made by Mrs. Sanford for the purpose alone of showing that she and he claimed title from Mark Foster as a common source, consisting of: (1) The application of R. W. Foster as guardian of her estate to sell 130 acres of her land, filed January 13, 1910; (2) notice of the filing of said application and return thereon showing it to have been posted as required by law; (3) order of the county court of Delta county granting said application and directing a sale of said 130 acres, made February 28, 1910; (4) report of a sale thereof to Nidever, filed February 28, 1910; (5) order confirming sale and directing title to be made to the purchaser, made March 7, 1910; (6) deed from R. W. Foster as guardian to Nidever, dated March 7, 1910; and (7) deeds from Nidever to Hamer, dated January 2, 1911, and January 7, 1914.

[1-3] Controverting Hamer's contention, Mrs. Sanford insists that the testimony specified, having been offered by her and admitted only for the purpose stated, could not be considered as evidence of title in Hamer, unless offered by him, and that, as it was not offered by him, he was before the court without any evidence whatever of title in himself.

The rule in actions of trepass to try title is, it seems, that evidence offered by the plaintiff to prove common source cannot be considered as evidence of title in the defendant, unless offered by him. Article 7749, Vernon's Statutes; Ogden v. Bosse, 86 Tex. 336, 24 S. W. 798; Hardware Co. v. Davis, 87 Tex. 146, 27 S. W. 62. A qualification of the rule was stated in the case last cited as follows:

"If the plaintiff in an action of trespass to try title, in order to maintain his action, prove that both he and defendant claim from a common grantor, and if in doing this he should exhibit the defendant's title, and it should appear upon its face to be superior to his own, he cannot succeed, unless he go further, and show that, notwithstanding its apparent soundness, it is for some reason invalid."

It may be that, looking to the face of the orders directing and confirming the sale made to Nidever alone, the trial court should have indulged a presumption in favor of the existence of power to make them. Martin v. Robinson, 67 Tex. 374, 3 S. W. 550. If so, then it would have appeared prima facie from the testimony adduced by Mrs. Sanford to prove common source that Hamer's title was superior to her own. If that was the atti-tude of the case, then it was incumbent on her to "go further and show that, notwithstanding its apparent soundness," the title in Hamer for some reason was invalid. We think she did that. As shown in the statement above, she alleged in a supplemental petition that R. W. Foster never was guardian of her estate, and that he practiced a fraud on the county court of Delta county when he induced it to make the orders directing and confirming the same to Nidever, on the faith of his representations that he was such guardian. We think these allegations should be construed as a direct attack by Mrs. Sanford on those orders, and entitled her to prove that said R. W. Foster was not the guardian of her estate. As has already been stated, the testimony sufficiently showed, and the court found the fact to be, that R. W. Foster was not such guardian. If he was not, then plainly the orders made by the county court of Delta county were void, and Hamer was without title to the land.

[4] A further contention made by Hamer is that the trial court should have required Mrs. Sanford as a condition to the recovery of the land awarded her, to "refund so much of the purchase money paid by Nidever as was shown to have been used by R. W. Foster as her guardian in her necessary support and maintenance, and as was found by the court to have been so used." The contention must be overruled. The liability incurred by Mrs. Sanford, if any, on account of necessaries furnished her by R. W. Foster while she was a minor, was a personal one, and not a charge on her property. We know of no rule which would have authorized the court to require her to discharge the liability she may have so incurred before awarding her a recovery of property she owned. Northcraft v. Oliver, 74 Tex. 168, 11 S. W. 1121.

[5] While we agree with Mrs. Sanford in the contention she makes that the judgment, in so far as it is in her favor, does not appear from the record to be erroneous, we do not agree with her in the further contention that the judgment is wrong in so far as it awards a recovery by Hamer against her of $415 as the difference in his favor between the value of the use of the land and the value of improvements he placed on it. It did not follow because Hamer failed to prove title to the land that he was not entitled to an allowance for improvements placed by him thereon. If under all the facts and circumstances "he had good ground to believe, and did believe, that the title under which he entered was good, and, acting on such belief, he in good faith made permanent and valuable improvements which enhanced the value of the land," he was entitled to the allowance claimed, notwithstanding the title he asserted was worthless. West Lumber Co. v. Chessher, 146 S. W. 977. The finding of the trial court that Hamer did that

seems to be amply supported by testimony in the record. And Mrs. Sanford has not referred us to and we have not found testimony in the record which would have supported a finding to the contrary.

The judgment is affirmed.