Howard D. DODGEN et al., Appellants,

v.

W. D. HADEN COMPANY, Appellee.

No. 15817.

Court of Civil Appeals of Texas.

Fort Worth.

May 24, 1957.

Rehearing Denied June 21, 1957.

**444**

John Ben Shepperd, former Atty. Gen. of Texas, A. M. LeCroix, former Asst. Atty. Gen., Will Wilson, Atty. Gen., John R. Lennan, Asst. Atty. Gen., and Cecil C. Rotsch, Asst. Atty. Gen., for appellants.

Dibrell, Dibrell & Greer and Louis J. Dibrell, Galveston, for appellee.

MASSEY, Chief Justice.

Appellee W. D. Haden Company sued for declaratory judgment and for injunction as ancillary relief. Suit was against Howard D. Dodgen, Executive Secretary, and against the Chairman and other members of the Game and Fish Commission of Texas. They were sued both individually and in their respective capacities incident to the operation of the Commission. These parties are the appellants before us.

In the trial court appellants filed their plea in abatement, wherein they asserted that appellee's cause of action was in fact a suit against the sovereign State of Texas, such fact being apparent on the face of appellee's petition, and should be abated since appellee had not secured the necessary permission of the Legislature to maintain the suit. The plea was overruled, and trial proceeded on the merits. Declaratory judgment was entered as prayed for by appellee, and appellants were enjoined from canceling a certain permit (Sand, Shell and Gravel Permit No. 243–A–6) theretofore issued by the Game and Fish Commission through its Executive Secretary.

As of this date the matter of the injunction has become moot and our consideration relates to the judgment only in respect to the declaratory relief.

The "permit" in question was granted to appellee by the Game and Fish Commission under date of April 15, 1954, and provided by its terms that it should be effective until date of April 25, 1955. By it the appellee was granted permission to remove "mudshell" from a certain area in or adjacent to Galveston Bay. The authority therefor was provided in Art. 4051 et seq., R.C.S. 1925. Appellee was obliged to furnish a bond in the amount of $5,000. The "permit" provided that as to any shell removed appellee should pay the Commission 7¢ per cubic yard. Appellee proceeded under the authority of the "permit" and operated as it had done for many years, remitting to the Commission 7¢ per cubic yard of "mudshell" removed.

In the latter part of 1954 the Commission, pursuant to the provisions of Art. 4053d, and as the result of a study made of what

amount would represent a fair price for "mudshell" taken by "licensees" under the provisions of Art. 4051 et seq., determined that a fair price therefor would be 10¢ per cubic yard. Through machinery set in motion under the provisions of statute such new price was set, to become effective on January 1, 1955. In December of 1954 the appellee was so notified, and further informed that the pertinent paragraph of the "permit" (No. 243–A–6) theretofore issued to him was amended so as to provide for the price increase.

Appellee continued to operate, remitting to the Commission the amount provided for by the original "permit", and a course of correspondence ensued, culminating in the Commission threatening to cancel. Appellee's suit was then brought, in substance to obtain a judgment declaring that under its "permit" it was entitled to continue to remove the shell at 7¢ per cubic yard until the expiration date therein provided. The ancillary injunctive relief sought was to prevent the Commission from canceling the license. As previously noted, this phase has become moot, and by agreement the difference in the amount owing the Commission under appellee's theory and under the Commission's theory (amounting to $21,053.87) is presently held in the Registry of the court to abide final judgment.

■ It is our conclusion that the disposition of this case depends upon whether appellee's suit was a suit against the State of Texas. If such was its character then it should have been abated because of the State's immunity from suits brought without its consent. We do conclude that appellee's suit was a suit against the State, and that the trial court erred in failing to abate the same on motion.

It accordingly follows that the judgment is to be reversed and the cause dismissed.

■ The same rule of State immunity from suits without its consent applies to suits under the Uniform Declaratory Judgments Act. Vernon's Ann.Civ.St. art. 2524–1 et seq. American Federation of Labor v. Mann, Tex.Civ.App., Austin, 1945, 188 S.W.2d 276. We believe that it is well settled in Texas that a suit against State officers, to require them to perform acts which constitute a performance of a contract by the State, is in effect a suit against the State itself. Where relief is sought by a plaintiff against such an officer which nominally might be granted against him as an individual, but the effect of which could operate to control the action of the State or subject it to liability, action for such relief would be a suit against the State. Herring v. Houston National Exchange Bank, 1923, 113 Tex. 264, 253 S.W. 813.

■ Where the actions of an officer do not conflict with the terms of his valid statutory authority, and where such actions would be regarded as those of a private principal under the normal rules of agency, then they are the actions of the sovereign. Except where the Legislative branch of government sees fit to provide otherwise, and even when the sovereign's actions fall within the field of commerce rather than confined strictly to its governmental functions, the strongest reasons of public policy dictate that it cannot be stopped in its tracks by any plaintiff who presents a disputed question of property or contract right. Larson v. Domestic & Foreign Commerce Corp., 1949, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628.

In view of the status of the agreement of the parties regarding the money retained in the registry of the trial court, and in view of the nature of the proceeding, we have no occasion to enter any order relative to such fund. In view thereof, however, we have concluded that proper disposition requires that we remand the cause with instructions that the trial court dismiss the suit.

Accordingly, the judgment is reversed, the cause is remanded to the court below with the direction that suit be dismissed.